Slip Op. 17-33

UNITED STATES COURT OF INTERNATIONAL TRADE

|                          |   |                     |
|--------------------------|---|---------------------|
| UNITED STATES,           | : |                     |
|    *Plaintiff,*          | : |                     |
| v.                       | : | Court No. 14-00310  |
| PAUL PUENTES,            | : |                     |
|    *Defendant*.          | : |                     |

[Granting Plaintiff's Motion for Entry of Default Judgment]

Dated: March 29, 2017

<u>Albert S. Iarossi</u>, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., for Plaintiff. With him on the brief were <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Jeanne E. Davidson</u>, Director, and <u>Franklin E. White, Jr.</u>, Assistant Director, Commercial Litigation Branch.

# OPINION

RIDGWAY, Judge:

Plaintiff, the United States, brings this action to recover a civil penalty imposed on Defendant Paul Puentes ("Puentes") by the Bureau of Customs and Border Protection ("Customs").[1] *See generally* Complaint; Plaintiff's Motion for Entry of Default Judgment ("Pl.'s Brief"). Now pending is Plaintiff's Motion for Entry of Default Judgment, which seeks judgment against Puentes in the amount of $30,000, as well as post-judgment interest and costs. Complaint at 6; Pl.'s Brief at 1, 9.[2]

---

[1] The Bureau of Customs and Border Protection is part of the U.S. Department of Homeland Security. It is commonly known as U.S. Customs and Border Protection (or simply "CBP") and is referred to as "Customs" herein.

[2] The paragraphs of the Complaint are misnumbered. Specifically, there are no paragraphs numbered 28 and 29. In other words, paragraph 27 is followed immediately by paragraph 30. In

Jurisdiction lies under 28 U.S.C. § 1582(1) (2006).[3] For the reasons summarized below, Plaintiff's Motion for Entry of Default Judgment must be granted.

## I. Background

At the time of the events giving rise to this action, Paul Puentes was a licensed customs broker. Complaint ¶ 3.[4] At issue is a $30,000 penalty that Customs assessed against Puentes in early 2011, pursuant to 19 U.S.C. § 1641(d). *See generally* Complaint; *see also* Declaration of Delia Crawford *passim* (Attachment A to Pl.'s Brief) ("Crawford Declaration"); Pl.'s Brief at 3-4, 8-9. The two counts of the Government's Complaint address four types of misconduct, which the Government characterizes as "Merchandise Processing Fees Deception," "Late Entry Summaries," "Failure To File Entry Summaries," and "Misrepresentation Of The Importer of Record." *See generally* Pl.'s Brief at 1-3. As explained below, because Puentes failed to plead or otherwise respond to the Complaint, the factual allegations that follow, as set forth in the Complaint, must be taken as true. *See generally infra* section II.

<u>Payment of Merchandise Processing Fees</u>. First, between April 2008 and February 2009, Puentes filed Customs Forms 7501s ("CF 7501s") – also known as "entry summaries" – for 88

---

the interest of simplicity, the paragraphs of the Complaint are cited herein as they are (mis)numbered in the Complaint itself.

[3]All citations to statutes herein are to the 2006 edition of the United States Code. Similarly, all citations to regulations are to the 2008 edition of the Code of Federal Regulations. The pertinent text of all cited statutes and regulations remained the same at all times relevant herein.

[4]In December 2012, Puentes' customs broker's license was revoked by operation of law after he failed to file the requisite triennial status report. Notice of Revocation of Customs Broker Licenses, 77 Fed. Reg. 72,873, 72,876 (Dec. 6, 2012); *see also* Crawford Declaration ¶ 12; Pl.'s Brief at 4.

entries of merchandise on behalf of his client Florexpo, LLC ("Florexpo"). Complaint ¶ 4.[5] However, as to 79 of the 88 entries, Puentes collected merchandise processing fees from Florexpo in an amount that exceeded the sum that he ultimately remitted to Customs on the company's behalf. *Id*. ¶¶ 5-7.[6]

Specifically, for the 79 entries in question, the CF 7501s that Puentes sent to Florexpo reflected the true value of the imported merchandise and correctly calculated the amount that the company owed to Customs for merchandise processing fees. Complaint ¶ 5. But, after receiving payment from Florexpo in the full and correct amount due, Puentes submitted different CF 7501s to Customs – *i.e.*, CF 7501s that reflected lower declared values and correspondingly lower merchandise processing fees. *Id*. ¶¶ 5-7. As a result of these actions, Puentes collected from Florexpo approximately $6437.05 more in merchandise processing fees than he paid to Customs on the company's behalf. *Id*. ¶ 7, Ex. A (list of 79 entries where Puentes allegedly misrepresented on CF 7501s the value of merchandise, as well as the merchandise processing fees due to Customs).

---

[5]CF 7501s ("entry summaries") provide the information necessary for Customs to assess duties, compile import statistics, and fulfill other functions. CF 7501s must be filed for all merchandise that is formally entered for consumption, within 10 working days after entry. *See* 19 C.F.R. §§ 142.11, 142.12(b).

[6]Merchandise processing fees ("MPFs") are administrative fees charged "for the provision of customs services" and are used to offset expenses that Customs incurs in processing merchandise that is formally entered or released. 19 U.S.C. § 58c(a)(9); *see also* 19 C.F.R. § 24.23; Shell Oil Co. v. United States, 35 CIT ____, ____ n.4, 781 F. Supp. 2d 1313, 1317 n.4 (2011), *aff'd*, 688 F.3d 1376 (Fed. Cir. 2012). At the time of the entries at issue in this case, the merchandise processing fee was an *ad valorem* fee of 0.21% of the value of the imported merchandise. 19 C.F.R. § 24.23(b)(1)(i)(A). The amount of the merchandise processing fees imposed on each CF 7501 (*i.e.*, each entry summary) "shall not exceed $485" or be less than $25. 19 C.F.R. § 24.23(b)(1)(i)(B).

On September 1, 2009, Florexpo filed a "Prior Disclosure" reporting to Customs conduct that Puentes engaged in during the time that he served as the company's customs broker. Complaint ¶ 8.[7] In its Prior Disclosure, Florexpo informed Customs that the company "had paid Mr. Puentes the MPF[s] that [were] actually owed on the entries at issue and that it had 'believed that the correct value information, including MPF[s], was being declared'" to the agency. *Id.*; Crawford Declaration ¶ 7, Exs. C-D (Florexpo's Prior Disclosure and Customs' acceptance of the Prior Disclosure). These findings outlined above are the subject of both Count I and Count II of the Complaint. *See* Complaint ¶¶ 17-19 (Count I); *id.* ¶ 25 (Count II, re: 19 C.F.R. § 111.29); *id.* ¶ 31 (Count II, re: 19 C.F.R. § 111.32).

Timeliness of CF 7501s. Customs requires that a CF 7501 must be filed for any merchandise that is formally entered for consumption, no more than 10 working days after entry. 19 C.F.R. §§ 142.11(a), 142.12(b). However, between September 2008 and February 2009, Puentes filed CF 7501s out of time for some 250 entries, on behalf of seven separate clients.

---

[7]The disclosure of an import law violation may provide a safe harbor for the disclosing party if the disclosure is made "before, or without knowledge of, the commencement of a formal investigation of the violation." United States v. Ford Motor Co., 463 F.3d 1286, 1294-95 (Fed. Cir. 2006) (citing 19 U.S.C. § 1592(c)(4)); *see also* 19 C.F.R. § 162.74 (explaining purpose and process of filing a valid prior disclosure). Submission of a valid prior disclosure may reduce or eliminate the penalties for which an importer might otherwise be liable due to noncompliance with import laws and regulations. *See generally* Brother Int'l Corp. v. United States, 27 CIT 1744, 1744 n.2, 294 F. Supp. 2d 1373, 1374 n.2 (2003); *see also* U.S. Customs and Border Protection, What Every Member of the Trade Community Should Know About: The ABC's of Prior Disclosure, p.7 (April 2004). Customs' official policy is to encourage the submission of prior disclosures. *See* What Every Member of the Trade Community Should Know About: The ABC's of Prior Disclosure, p.7.

Complaint ¶ 9, Ex. B (listing the 250 late-filed CF 7501s and identifying the seven clients).  These findings are the subject of Count II of the Complaint.  *See id*. ¶ 26.

Filing of CF 7501s.  Apart from the 250 entries where Puentes late-filed the requisite CF 7501s (discussed immediately above), there were another 58 entries between September 2008 and January 2009 as to which Puentes failed to file any CF 7501s at all.  In other words, during that timeframe, Puentes made 58 entries as to which he filed no CF 7501 whatsoever.  Complaint ¶ 10, Ex. C (listing the 58 entries as to which no CF 7501s were filed).  These findings are the subject of Count II of the Complaint.  *See id*. ¶ 26.

Identification of the Importer of Record.  Lastly, between April 2009 and April 2010, Puentes filed CF 7501s for 43 entries that identified WorldFresh Express Inc. ("WorldFresh") as the importer of record, although WorldFresh had not authorized Puentes to clear those entries on its behalf and had no knowledge that he was doing so.  Complaint ¶¶ 11-13; Crawford Declaration ¶¶ 9-10, Ex. E (Customs' Notice of Action sent to WorldFresh and WorldFresh's response).  The actual importer of record for the 43 entries was Puentes himself.  Complaint ¶ 13.  These findings are the subject of Count II of the Complaint.  *See id*. ¶¶ 27, 32.

Procedural History.  Customs sent Puentes both a pre-penalty notice and a penalty notice.  Complaint ¶ 14; *see also* Crawford Declaration ¶ 11; Pl.'s Brief at 3-4, 8.  The pre-penalty and penalty notices were followed by four demand letters seeking payment of the $30,000 penalty.  Crawford Declaration ¶ 11; Pl.'s Brief at 3-4, 8.  With one exception (where, in any event, he failed

Court No. 14-00310                                                                                                      Page 6

to follow through), Puentes failed to respond to Customs' notices and demands, and the penalty still remains unpaid.  Complaint ¶¶ 20, 33; Crawford Declaration ¶ 11; Pl.'s Brief at 4, 8.[8]

To remedy Puentes' nonpayment, the Government commenced suit in this court, filing its Summons and Complaint on November 25, 2014, and Proof of Service was filed on March 17, 2015.  Puentes failed to respond to the Complaint, and, upon Plaintiff's Request for Entry of Default, the Clerk of the Court entered default on September 16, 2015.  *See* Entry of Default (Sept. 16, 2015).  The Government subsequently filed the pending Motion for Entry of Default Judgment.  Again, Puentes has failed to respond.

## II. Standard of Review

A case brought pursuant to 28 U.S.C. § 1582(1) is subject to *de novo* review.  28 U.S.C. § 2640(a)(6) (providing that, in cases commenced under 28 U.S.C. § 1582, "[t]he Court of International Trade shall make its determinations upon the basis of the record made before the court"); United States v. Santos, 36 CIT ____, ____, 883 F. Supp. 2d 1322, 1326 (2012).  Specifically, in analyzing a penalty enforcement action under § 1582(1), the court must consider both whether the penalty imposed has a sufficient basis in law and fact, and whether Customs accorded the customs broker all the process to which he is entitled by statute and regulation.  United States v. Santos, 36 CIT at ____, 883 F. Supp. 2d at 1326 (citation omitted).

---

[8]Following the fourth demand letter (which was sent by Customs' Office of the Chief Counsel), Puentes contacted Customs to discuss options for resolving his case.  According to the Government, "[a]lthough Mr. Puentes appeared ready to make 15 monthly payments of $2,000 to resolve the penalty, he never executed the promissory note" that Customs required.  Pl.'s Brief at 8.

Section 2640(a) draws no distinction between the determination as to the validity of a penalty claim and the determination as to the amount of the penalty. 28 U.S.C. § 2640(a); United States v. Santos, 36 CIT at ____, 883 F. Supp. 2d at 1326. Therefore, pursuant to § 2640(a), both the validity of a claim for a penalty and the amount of that penalty are reviewed *de novo*. United States v. Santos, 36 CIT at ____, 883 F. Supp. 2d at 1326 (citation omitted).

When a defendant has been found to be in default, all well-pled facts in the complaint are taken as true for purposes of establishing the defendant's liability. *See* USCIT R. 8(c)(6); 10 James Wm. Moore *et al.*, Moore's Federal Practice § 55.32[1][a], at 55-38 to 55-39 (3d ed. 2015) ("Moore's Federal Practice"); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688.1, at 84-92 (4th ed. 2016) ("Wright & Miller"); Finkel v. Romanowicz, 577 F.3d 79, 83-84 & n.6 (2d Cir. 2009) (citing, *inter alia*, Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

That said, however, a default does not admit legal claims. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (reasoning, in context of motion to dismiss for failure to state a claim, that when a court accepts factual allegations as true, it does not also accept legal conclusions as true). Thus, an entry of default alone does not suffice to entitle a plaintiff to any relief. Even after an entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See* 10A Wright & Miller § 2688.1, at 91; *see also* 10 Moore's Federal Practice § 55.32[1][b], at 55-40.

Further, even if it is determined that the unchallenged facts constitute a legitimate cause of action, "a default does not concede the amount demanded." *See* 10A Wright & Miller § 2688, at 80; *see also* 10 Moore's Federal Practice § 55.32[1][c], at 55-41 (explaining that defaulting party

"does not admit the allegations in the claim as to the amount of damages"). The plaintiff bears the burden of proving the extent of the relief to which it is entitled. *See* 10 Moore's Federal Practice § 55.32[1][c], at 55-41. The court is obligated to ensure that there is an adequate evidentiary basis for any relief awarded. *See* Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In addition, in the case of a motion for default judgment, the court may look beyond the complaint if necessary to "establish the truth of an allegation by evidence," to "determine the amount of damages or other relief," or to "investigate any other matter." *See* USCIT R. 55(b); United States v. Santos, 36 CIT at \_\_\_\_, 883 F. Supp. 2d at 1327 (citation omitted).

### III. <u>Analysis</u>

As explained above, Puentes' default means that all well-pled facts set forth in the Government's Complaint are taken as true for purposes of establishing liability – but the legal conclusions are not. Accordingly, the threshold issue presented is whether the well-pled facts set forth in the Complaint establish Puentes' liability. The issue of liability is analyzed separately as to each of the two counts of the Complaint below. *See infra* section III.A & III.B.

Further, even if the Government has established that Puentes is liable, that is not the end of the matter. The inquiry then turns to the amount of the penalty imposed by Customs, which is similarly reviewed *de novo*. *See infra* section III.C.

### A. Liability Under Count I – 19 U.S.C. § 1641(d)(1)(F)

Count I of the Government's Complaint is predicated on 19 U.S.C. § 1641(d)(1)(F), which authorizes Customs to impose a monetary penalty on any customs broker who, "in the course of its customs business, with intent to defraud, in any matter willfully and knowingly deceived, misled or threatened any client." 19 U.S.C. § 1641(d)(1)(F); Complaint ¶ 16. The Government alleges that Puentes "deceived" and "misled" his client Florexpo as to 79 entries, by collecting merchandise processing fees from the company in excess of what he ultimately paid to Customs on the company's behalf, and then pocketing the difference, all without Florexpo's knowledge. Complaint ¶¶ 17-19, Ex. A; Pl.'s Brief at 6; *see also* Complaint ¶¶ 4-8; Crawford Declaration ¶¶ 5-8, Exs. C-D; Pl.'s Brief at 1-2.[9] The Government further alleges that the "willful" and "knowing" nature of Puentes' conduct is evidenced by the fact that he prepared two entirely different sets of CF 7501s – one set of CF 7501s that he submitted to Florexpo (reflecting the true value of the imported merchandise and accurately stating the associated merchandise processing fees), and a second set of CF 7501s that he filed with Customs (which specified declared values and merchandise processing fees that were lower than those stated in the CF 7501s provided to Florexpo). Complaint ¶ 19, Ex. A; *see also id*. ¶¶ 4-8; Crawford Declaration ¶¶ 5-8, Exs. C-D; Pl.'s Brief at 1-2, 6.

Taking these alleged facts as true, the Government has established Puentes' liability under 19 U.S.C. § 1641(d)(1)(F), because, "with intent to defraud," he "willfully and knowingly

---

[9]The Government points to Florexpo's Prior Disclosure as further evidence of Puentes' deception. *See* Pl.'s Brief at 6 (citing Complaint ¶¶ 8, 25); Crawford Declaration ¶ 7, Exs. C-D.

deceived[] [and] misled" his client Florexpo through his merchandise processing fees scheme, personally profiting by more than $6400.[10]

### B. Liability Under Count II – 19 U.S.C. § 1641(d)(1)(C)

Count II of the Government's Complaint invokes 19 U.S.C. § 1641(d)(1)(C), which authorizes Customs to impose a penalty on any customs broker who "has violated any provision of any law enforced by [Customs] or the rules or regulations issued under any such provision." 19 U.S.C. § 1641(d)(1)(C); Complaint ¶ 22.

Here, the Government alleges that Puentes violated two applicable customs regulations. Complaint ¶ 23; Pl.'s Brief at 7-8; *see generally* Complaint ¶¶ 21-32; Crawford Declaration ¶¶ 3-10; Pl.'s Brief at 2-3. First, the Government asserts that Puentes violated 19 C.F.R. § 111.29, which is titled "Diligence in correspondence and paying monies." Complaint ¶¶ 23, 24-27; Pl.'s Brief at 7; *see also* Complaint ¶¶ 4-13; Crawford Declaration ¶¶ 3-10; Pl.'s Brief at 1-3.[11] And,

---

[10]As explained in section III.B below, these same facts also underpin, in part, Count II of the Complaint. *See generally* Complaint ¶¶ 25, 31; 19 U.S.C. § 1641(d)(1)(C) (authorizing imposition of penalty on any customs broker who has violated any customs law, rule, or regulation); 19 C.F.R. § 111.29 (requiring customs brokers to exercise "due diligence" in correspondence and making payments); 19 C.F.R. § 111.32 (prohibiting customs brokers from knowingly giving Customs false or misleading information).

[11]19 C.F.R. § 111.29(a) states:

Each broker must exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker. Payment of duty, tax, or other debt or obligation owing to the Government for which the broker is responsible, or for which the broker has received payment from a client, must be made to the Government on or before the date that payment is due. Payments received by a broker from a client after the due date must be transmitted to the Government within 5 working days from receipt by the broker. Each broker

Court No. 14-00310 Page 11

second, the Government asserts that Puentes knowingly gave false or misleading information to Customs, in violation of 19 C.F.R. § 111.32, which is titled "False information." Complaint ¶¶ 23, 30-32; Pl.'s Brief at 7-8; *see also* Complaint ¶¶ 4-8, 11-13; Crawford Declaration ¶¶ 5-10; Pl.'s Brief at 1-3.[12] The specific facts alleged to give rise to the violations of 19 C.F.R. § 111.29 and § 111.32, respectively, are reviewed in turn below.

1. Violations of 19 C.F.R. § 111.29

Section 111.29 of the customs regulations requires that a customs broker "exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter" handled by the broker. 19 C.F.R. § 111.29. The same regulation further requires that "[p]ayment of duty, tax, or other debt or obligation owing to the Government for which the broker is responsible, or for which the broker has received payment from a client, must be made to the Government on or before the date that payment is due." *Id*.

---

must provide a written statement to a client accounting for funds received for the client from the Government, or received from a client where no payment to the Government has been made, or received from a client in excess of the Governmental or other charges properly payable as part of the client's customs business, within 60 calendar days of receipt. No written statement is required if there is actual payment of the funds by a broker.

[12]Pursuant to 19 C.F.R. § 111.32:

A broker must not file or procure or assist in the filing of any claim, or of any document, affidavit, or other papers, known by such broker to be false. In addition, a broker must not knowingly give, or solicit or procure the giving of, any false or misleading information or testimony in any matter pending before the Department of Homeland Security or any representative of the Department of Homeland Security.

Count II first alleges that Puentes violated 19 C.F.R. § 111.29 when he failed to forward to Customs all of the monies for payment of merchandise processing fees that he received from his client Florexpo. *See* Complaint ¶ 25, Ex. A; *see also id.* ¶¶ 4-8; Crawford Declaration ¶¶ 5-8, Exs. C-D; Pl.'s Brief at 1-2.[13] As discussed above, the Government alleges that, as to 79 entries, Puentes collected merchandise processing fees from Florexpo in an amount that exceeded the sum that he remitted to Customs on the company's behalf. Complaint ¶¶ 5-7, 25, Ex. A; *see also* Crawford Declaration ¶¶ 5-8, Exs. C-D; Pl.'s Brief at 1-2.[14]

Specifically, for the 79 entries in question, Puentes sent Florexpo CF 7501s that reflected the true value of the imported merchandise and correctly calculated the amount that the company

---

[13] In its Complaint, the Government claims that Puentes' handling of Florexpo's merchandise processing fees constitutes a violation of 19 C.F.R. § 111.29. *See* Complaint ¶¶ 24-25. However, the Government does not argue that claim in its brief. *See* Pl.'s Brief at 7 (claiming, as violations of 19 C.F.R. § 111.29, only Puentes' untimely filing of CF 7501s as to 250 entries and his wholesale failure to file CF 7501s as to another 58 entries).

Ordinarily, arguments that are not briefed are deemed waived. *See, e.g.*, SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (and cases cited there); Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002). Indeed, here it is a claim – not a mere argument – that the Government has failed to brief.

However, a court has discretion to consider arguments (and claims) that might otherwise be considered to have been waived. *See, e.g.*, SmithKline Beecham Corp., 439 F.3d at 1320 n.9. Moreover, in the case at bar, Puentes has not appeared, and thus no party has argued waiver. Further, in this case, both the basis for (*i.e.*, the validity of) the penalty and the amount of the penalty are subject to *de novo* review. Under these circumstances, it is within the court's authority to consider the Government's claim which it asserted in its Complaint but did not brief. *Cf.* United States v. Santos, 36 CIT at ____ n.2, 883 F. Supp. 2d at 1325 n.2 (holding that, "[b]ecause the court determines the amount of the penalty *de novo*," court had authority to correct error where complaint alleged penalty of $4000, but penalty notice stated that penalty was $5000).

[14] As explained above, Puentes' handling of Florexpo's merchandise processing fees is also the subject of Count I of the Complaint. *See supra* section III.A. In Count II, that same conduct is alleged to violate both 19 C.F.R. § 111.29 and 19 C.F.R. § 111.32. *See* sections III.B.1 & III.B.2.

owed to Customs for merchandise processing fees. Complaint ¶ 5; *see also id.* ¶ 25; Crawford Declaration ¶ 7, Exs. C-D; Pl.'s Brief at 2. But, after receiving payment from Florexpo in the full and correct amount due, Puentes submitted different CF 7501s to Customs – *i.e.*, CF 7501s that reflected lower declared values and correspondingly lower merchandise processing fees. Complaint ¶¶ 6-7, Ex. A; *see also id.* ¶ 25; Crawford Declaration ¶ 7, Exs. C-D; Pl.'s Brief at 2. As such, Puentes failed to "exercise due diligence in making financial settlements, . . . and in preparing or assisting in the preparation and filing of records." 19 C.F.R. § 111.29.

Similarly, when Puentes failed to forward to Customs the full amount of the merchandise processing fees that were paid by Florexpo and due to Customs, Puentes failed to make "[p]ayment of duty, tax, or other debt or obligation owing to the Government" for which he was responsible and "for which [he] ha[d] received payment from a client." 19 C.F.R. § 111.29. Taking as true the facts alleged in the Complaint, Puentes' handling of Florexpo's merchandise processing fees violated 19 C.F.R. § 111.29.

Count II next alleges that Puentes violated 19 C.F.R. § 111.29 by filing untimely CF 7501s. *See* Complaint ¶ 26, Ex. B; *see also id.* ¶ 9; Crawford Declaration ¶ 3, Ex. A (listing the 250 late-filed CF 7501s); Pl.'s Brief at 2-3, 7. As explained above, customs regulations generally require the filing of a CF 7501 no later than 10 working days after merchandise is entered. 19 C.F.R. §§ 142.11(a), 142.12(b). According to the Government, however, between September 2008 and February 2009, Puentes late-filed CF 7501s as to some 250 entries, on behalf of seven separate clients. Complaint ¶¶ 9, 26, Ex. B; Crawford Declaration ¶ 3, Ex. A; Pl.'s Brief at 2-3, 7. At a minimum, Puentes thus failed to "exercise due diligence . . . in preparing or assisting in the preparation and filing of records" relating to customs business that had been entrusted to him as a

broker.  19 C.F.R. § 111.29.  Taking as true the facts alleged in the Complaint, Puentes violated 19 C.F.R. § 111.29 by failing to timely file CF 7501s on his clients' behalf.

Count II further alleges that Puentes violated 19 C.F.R. § 111.29 by failing to file any CF 7501s whatsoever for dozens of entries of merchandise.  Complaint ¶ 26, Ex. C; *see also id*. ¶ 10; Crawford Declaration ¶ 4, Ex. B (listing the 58 entries as to which no CF 7501s were filed); Pl.'s Brief at 3, 7.  Although customs regulations generally require the filing of a CF 7501 no later than 10 working days after merchandise is entered (19 C.F.R. §§ 142.11(a), 142.12(b)), the Government alleges that – as to 58 entries made between September 2008 and January 2009 – Puentes failed to file any CF 7501s whatsoever.  Complaint ¶¶ 10, 26, Ex. C; Crawford Declaration ¶ 4, Ex. B; Pl.'s Brief at 3, 7.  Taking as true these facts alleged in the Complaint, Puentes failed to "exercise due diligence . . . in preparing or assisting in the preparation and filing of records" relating to customs business that had been entrusted to him as a broker and thus violated 19 C.F.R. § 111.29 when he failed to file 58 CF 7501s on behalf of his clients.

Lastly, Count II alleges that Puentes violated 19 C.F.R. § 111.29 by misstating the importer of record on certain CF 7501s that he submitted to Customs.  Complaint ¶ 27; *see also id*. ¶¶ 11-13; Crawford Declaration ¶¶ 9-10, Ex. E; Pl.'s Brief at 3.[15]  In particular, the Government alleges

---

[15] Again the Government has asserted a claim in its Complaint that it has failed to brief. *See supra* n.13 (addressing Government's failure to brief claim that Puentes' handling of Florexpo's merchandise processing fees constituted violation of 19 C.F.R § 111.29).  Specifically, in its Complaint, the Government claims that Puentes' identification of WorldFresh as the importer of record on CF 7501s for 43 entries, without the company's knowledge or authorization, constitutes a violation of 19 C.F.R § 111.29.  *See* Complaint ¶¶ 24, 27.  But the Government failed to brief that claim.  *See* Pl.'s Brief at 7 (claiming, as violations of 19 C.F.R § 111.29, only Puentes' untimely filing of CF 7501s as to 250 entries and his wholesale failure to file CF 7501s as to another 58 entries).  The claim is nonetheless considered here, for the reasons summarized in note 13 above.

that, between April 2009 and April 2010, Puentes filed CF 7501s for 43 entries where he identified WorldFresh as the importer of record, without the authorization or knowledge of that company. Complaint ¶¶ 11-12, 27; *see also* Crawford Declaration ¶¶ 9-10, Ex. E; Pl.'s Brief at 3. However, Puentes was the actual importer of record for the 43 entries. He therefore should have identified himself as such on the CF 7501s. Complaint ¶ 13; *see also* Crawford Declaration ¶¶ 9-10; Pl.'s Brief at 3.[16] Again, at a minimum, Puentes thus failed to "exercise due diligence . . . in preparing or assisting in the preparation and filing of records." 19 C.F.R. § 111.29. Taking as true the facts alleged in the Complaint, Puentes' failure to correctly identify the importer of record on the CF 7501s in question constituted a violation of 19 C.F.R. § 111.29.

2. Violations of 19 C.F.R. § 111.32

In relevant part, 19 C.F.R. § 111.32 prohibits a broker from "fil[ing] . . . any document . . . known by such broker to be false." 19 C.F.R. § 111.32. Count II first alleges that – as to 79 entries between April 2008 and February 2009 – Puentes violated 19 C.F.R. § 111.32 by filing with Customs CF 7501s which he knew at the time included false valuations for Florexpo's merchandise. *See* Complaint ¶ 31, Ex. A; *see also id*. ¶¶ 4-8; Crawford Declaration ¶¶ 5-8, Exs. C-D; Pl.'s Brief at 1-2, 7-8.

According to the Government, Puentes prepared two separate sets of CF 7501s – one set of CF 7501s that he submitted to Florexpo (reflecting the true value of the imported merchandise and accurately stating the associated merchandise processing fees), and a second set of CF 7501s

---

[16] Count II of the Complaint alleges that Puentes' identification of WorldFresh as the importer of record on the 43 CF 7501s at issue violates both 19 C.F.R § 111.29 and 19 C.F.R § 111.32. *See* sections III.B.1 & III.B.2.

that he filed with Customs (which specified declared values and merchandise processing fees that were lower than those stated in the CF 7501s provided to Florexpo). Complaint ¶¶ 5-7, Ex. A; *see also id*. ¶¶ 4-8; Crawford Declaration ¶¶ 5-8, Exs. C-D; Pl.'s Brief at 1-2, 7-8. Thus, on at least these 79 occasions, Puentes "fil[ed] . . . [a] document . . . known by [him] to be false." Taking as true the facts alleged in the Complaint, Puentes violated 19 C.F.R. § 111.32 by filing CF 7501s which misstated the value of Florexpo's imported merchandise as well as the amount of merchandise processing fees owed to Customs.

Lastly, Count II alleges that Puentes violated 19 C.F.R. § 111.32 by filing with Customs CF 7501s that he knew falsely identified WorldFresh as the importer of record. Complaint ¶ 32; *see also id*. ¶¶ 11-13; Crawford Declaration ¶¶ 9-10, Ex. E; Pl.'s Brief at 3. In particular, the Government alleges that, between April 2009 and April 2010, Puentes filed CF 7501s for 43 entries where he identified WorldFresh as the importer of record, without the company's knowledge or authorization. Complaint ¶¶ 11-12, 32; *see also* Crawford Declaration ¶¶ 9-10, Ex. E; Pl.'s Brief at 3. The actual importer of record for the 43 entries was Puentes, who should have identified himself as such on the CF 7501s for those entries. Complaint ¶¶ 13, 32; *see also* Pl.'s Brief at 3. Thus, on these 43 occasions, Puentes "fil[ed] . . . [a] document . . . known by [him] to be false." Taking as true the facts alleged in the Complaint, Puentes violated 19 C.F.R. § 111.32 by filing with Customs CF 7501s that falsely identified WorldFresh as the importer of record.

       3. <u>Implications of Violations of 19 C.F.R. § 111.29 and 19 C.F.R. § 111.32</u>

As detailed above, taking the facts alleged in the Complaint as true, Puentes violated both 19 C.F.R. § 111.29 and 19 C.F.R. § 111.32 on numerous occasions. *See supra* sections III.B.1 &

III.B.2.  Accordingly, above and beyond his liability pursuant to 19 U.S.C. § 1641(d)(1)(F) (*see supra* section III.A), Puentes is also liable under 19 U.S.C. § 1641(d)(1)(C), which authorizes Customs to impose a penalty on any customs broker who has violated customs regulations.  19 U.S.C. § 1641(d)(1)(C).

### C.  The Amount of the Penalty

Customs imposed a $30,000 penalty on Puentes.  *See* Complaint ¶¶ 20, 33; Crawford Declaration ¶ 11; Pl.'s Brief at 3-4, 8-9.  The Government requests that default judgment be entered against Puentes for that sum, together with post-judgment interest and costs.  *See* Complaint at 6 (*ad damnum* clause, seeking judgment "in the amount of $30,000.00, plus interest and costs"); Pl.'s Brief at 1, 9.

Neither the statute nor the regulations provide any particular framework for determining the amount of the penalty here, except that such penalties are "not to exceed $30,000 in total."  19 U.S.C. § 1641(d)(2)(A); *see also* 19 C.F.R. § 111.91 (stating that monetary penalty may not "exceed an aggregate of $30,000 for one or more of the reasons set forth in [19 C.F.R. § 111.53] (a) through (f) . . .").  Within these bounds, the amount of the penalty is largely committed to Customs' sound discretion.  *See*, *e.g.*, United States v. Santos, 36 CIT at ____, 883 F. Supp. 2d at 1330.  Although the court is required to review the amount of a penalty *de novo*, where – as here – Customs' determination as to the amount is unchallenged, the agency's determination generally will be upheld so long as it is reasonable and supported by the facts.  *See* 28 U.S.C. § 2640(a)(5); *see also* United States v. Santos, 36 CIT at ____, 883 F. Supp. 2d at 1330 (citation omitted); United States v. Santos, 37 CIT at ____, 2013 WL 6801087, at *5 (2013).

The $30,000 penalty that Customs imposed on Puentes is the maximum permitted by statute. *See* 19 U.S.C. § 1641(d)(2)(A). However, that penalty is the result of multiple serious statutory and regulatory violations, concerning a substantial number of entries (and on behalf of numerous clients), over an extended period of time. Further, many, if not all, of the violations were intentional. These facts support Customs' decision to impose the maximum penalty under the law. *See generally* Pl.'s Brief at 9. Moreover, although he had the opportunity to do so, Puentes sought no relief from the monetary penalty that Customs imposed. *See* Pl.'s Brief at 8-9; *see also id*. at 3-4; Complaint ¶ 14; Crawford Declaration ¶ 11. More generally, he has been accorded all the process to which he is entitled by law. 19 U.S.C. § 1641(d)(2)(A); Complaint ¶ 14; Crawford Declaration ¶ 11; Pl.'s Brief at 3-4, 8.

Based on the record as it stands, the $30,000 penalty imposed on Puentes is reasonable and supported by the facts and the law. *Cf*. United States v. Ricci, 21 CIT 1145, 985 F. Supp. 125 (1997) (holding that penalty in amount of $30,000 was warranted where customs broker intentionally made 145 late payments of duties).[17]

---

[17]The Complaint requests the entry of judgment in the amount of $30,000, which is the amount of the penalty that Customs imposed for all of the violations alleged pursuant to 19 U.S.C. § 1641(d)(1)(C) and 19 U.S.C. § 1641(d)(1)(F). *See* Complaint at 6 (*ad damnum* clause, seeking judgment "in the amount of $30,000.00, plus interest and costs"). However, the Complaint also asserts that the violation alleged as the basis for the imposition of a penalty pursuant to 19 U.S.C. § 1641(d)(1)(F) is itself alone sufficient to justify a penalty of $30,000. *See id*. ¶ 20. Similarly, the Complaint asserts that the violations alleged as the basis for the imposition of a penalty pursuant to 19 U.S.C. § 1641(d)(1)(C) alone warrant a penalty of $30,000 (*i.e.*, without regard to the violation alleged pursuant to § 1641(d)(1)(F)). *See id*. ¶ 33.

As set forth above, the record as it stands establishes Puentes' liability under both Count I and Count II for a penalty in the amount of $30,000. There is therefore no need to consider whether a $30,000 penalty might have been justified on the basis of fewer than all of the violations alleged in the Complaint.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Entry of Default Judgment in the amount of $30,000, together with post-judgment interest and costs, is granted. *See* 28 U.S.C. § 1961 (interest); 28 U.S.C. § 1920 (costs); USCIT R. 54(d) (same).

Judgment will enter accordingly.

                                                                /s/ Delissa A. Ridgway
                                                                    Delissa A. Ridgway
                                                                             Judge

Decided: March 29, 2017
         New York, New York